# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

RONALD J. SCHILLING, JR., RUSSELL E.
DOLAN, JONATHAN A. HECKER,
MICHAEL MCEWEN, MICHAEL
HALAGER, DONALD L. BOLLINGER and
MARCEL HAMILTON, *Individually and on
Behalf of Other Similarly Situated Employees*,

Plaintiffs,

v.

SCHMIDT BAKING COMPANY, INC.,

Defendant.

Civil Action No. TDC-16-2498

## MEMORANDUM OPINION

Plaintiffs Ronald J. Schilling, Jr., Russell E. Dolan, Jonathan A. Hecker, Michael McEwen, Michael Halager, Donald L. Bollinger, and Marcel Hamilton (collectively, "Plaintiffs"), acting as individuals and on behalf of all similarly situated individuals, have filed this action against their employer Schmidt Baking Company, Inc. ("Schmidt"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (2012). Plaintiffs have filed a pre-discovery Motion for Conditional Certification and a Motion for Equitable Tolling of the Statute of Limitations. Having reviewed the submitted materials, the Court finds no hearing necessary. D. Md. Local R. 105.6. For the reasons set forth below, Plaintiffs' Motions are GRANTED.

## BACKGROUND

Schmidt, a bread production and distribution company based in Baltimore, Maryland, provides baked goods to various establishments, including restaurants, grocery stores, small

businesses, schools, prisons, and warehouses, throughout the mid-Atlantic region. Schmidt employs Plaintiffs and other individuals as District Sales Managers ("DSMs"), whose formal job description states that their function is to "manage" a particular geographic region in which Schmidt's products are sold. Compl. ¶ 30, ECF No. 1.

Plaintiffs allege that despite this job description, DSMs' primary duty is to assist a group of "independent operators"—independent contractors who lease delivery routes and vehicles from Schmidt in order to deliver Schmidt's products. *Id.* ¶ 31. Because independent operators are not Schmidt employees, DSMs have no authority over them. The primary way that DSMs assist independent operators is by filling in for them in driving their delivery routes, which generally take from 12 to 16 hours to complete. DSMs also fix any mistakes made by independent operators, including by retrieving incorrectly delivered products and delivering the correct ones. DSMs can be called on to take on such duties at any time, including on scheduled days off and before or after scheduled shifts, including overnight. Due to understaffing, in addition to assisting those independent operators operating within their own districts, DSMs are called upon to make deliveries originating in other districts and to correct errors occurring in those districts. Plaintiffs allege that, all told, they spend between 65 and 85 percent of their time each week making deliveries. Due to the limited number of delivery vehicles at each distribution center, DSMs use their personal vehicles to complete these deliveries approximately 90 percent of the time.

DSMs spend the remainder of their time performing clerical duties, manual labor around Schmidt's warehouses, and work at customers' stores. Their clerical duties include routine office work such as collecting receipts for transactions, checking the status of current orders, monitoring order adjustments, and responding to calls regarding the status of deliveries. DSMs

are expected to respond to calls and emails whenever an issue arises, even when they are off-duty. Their manual labor includes unloading products from delivery trucks, cleaning warehouses, and applying labels to products. Their work at customers' stores includes rearranging and stocking Schmidt's products on customers' shelves, retrieving stale or unused products, and completing one or two "product resets" per store each year, which may include changes ranging from replacing signs to constructing aisle displays. *Id.* ¶ 65.

According to Plaintiffs, DSMs have no discretion in completing these tasks. They operate at the direction of Schmidt's Branch Managers, who are their direct supervisors, and Area Sales Managers. Because DSMs are salaried employees paid weekly, they receive the same salary regardless of how many hours they actually work. Although DSMs such as Plaintiffs are scheduled to work between approximately 45 and 54 hours per week, because they are expected to perform job functions even during their scheduled time off, they consistently worked between 70 and 85 hours per week, sometimes working more than 100 hours over a seven-day work week.

On July 6, 2016, Plaintiffs Schilling, Dolan, and Hecker filed this action on behalf of all DSMs, alleging that Schmidt has unlawfully failed to pay them overtime wages. Plaintiffs brought the case as both a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and a class action pursuant to Maryland state wage laws. On July 27, 2016, Schmidt filed a Motion to Dismiss and for Summary Judgment. On September 23, 2016, the Court (Motz, J.), construing the motion as a Motion to Dismiss, granted it. Plaintiffs appealed that ruling. On November 17, 2017, the United States Court of Appeals for the Fourth Circuit affirmed the dismissal of Plaintiffs' state law claims but reversed the dismissal of the FLSA claim. Upon remand, Plaintiffs McEwen, Halager, Bollinger, and Hamilton joined the case as named Plaintiffs. On

February 26, 2018, Plaintiffs filed a Motion for Conditional Certification, asking the Court to conditionally certify an FLSA collective action on behalf of all Schmidt DSMs and to assist them in identifying and notifying DSMs who are not currently parties to the Complaint. That same day, Plaintiffs filed a Motion for Equitable Tolling of the Statute of Limitations, asking the Court to toll the deadline for a putative class member to file an FLSA claim during the period from July 27, 2016, the date on which Schmidt filed its Motion to Dismiss and for Summary Judgment, to the date the Court rules on the Motion for Conditional Certification.

## DISCUSSION

### I. Motion for Conditional Certification

#### A. Legal Standard

The FLSA generally requires that employees who work more than 40 hours in a week receive overtime pay at the rate of one and one-half times their regular pay rate. *See* 29 U.S.C. § 207(a). If an employer violates these rules, employees may sue their employers as individuals or, if they choose, in a collective action on behalf of themselves and "similarly situated" employees. 29 U.S.C. § 216(b); *see Simmons v. United Mortg. & Loan Inv., LLC,* 634 F.3d 754, 758 (4th Cir. 2011). If employees choose to pursue a collective action, they may seek court-approved notice to inform similarly situated employees that they may join the litigation. *See Hoffman–La Roche v. Sperling,* 493 U.S. 164, 169 (1989) (discussing the parallel collective action provision under the Age Discrimination in Employment Act).

The collective action provision serves several purposes. First, collective actions allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *See id* at 170. Second, collective actions allow the courts efficiently to resolve common issues in one proceeding. *See id.* Third, FLSA collective actions promote enforcement

of the law by empowering employees to "join in their litigation so that no one of them need stand alone in doing something likely to incur the displeasure of an employer." *See Pentland v. Dravo Corp.*, 152 F.2d 851, 853 (3d Cir. 1945).

Although the Fourth Circuit has not provided specific guidance on how to address a motion for conditional certification of an FLSA collective action, decisions from other Courts of Appeals have identified, and judges of the United States District Court for the District of Maryland generally apply, a two-step process to test the sufficiency of the purported class: (1) a pre-discovery determination that the purported class is similarly situated enough to disseminate notice (the "notice stage") and (2) a post-discovery determination, typically in response to a motion for decertification, that the purported class is indeed similarly situated. *See, e.g., Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218–19 (11th Cir. 2001); *Mooney v. Aramco*, 54 F.3d 1207, 1213–14 (5th Cir. 1995); *Randolph v. Powercomm Constr., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014); *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 686 (D. Md. 2010). At the notice stage, courts applying this process make a threshold determination whether the class is similarly situated based on "substantial allegations" in the pleadings and any submitted affidavits or declarations. *See Thiessen*, 267 F.3d at 1102. Then, once discovery is largely completed, such courts perform a more stringent inquiry into whether the class is indeed similarly situated. *Mooney*, 54 F.3d at 1214.

Because the record is sparse at the notice stage, courts often apply "a fairly lenient standard." *Id.*; *Hipp*, 252 F.3d at 1218 (noting that courts use a "fairly lenient standard" that "typically results in 'conditional certification'" at the notice stage); *Randolph*, 7 F. Supp. 3d at 575–76. Thus, courts require no more than "substantial allegations that the putative class

members were together the victims of a single decision, policy, or plan." *Thiessen,* 267 F.3d at 1102 (citations omitted); *Randolph,* 7 F.Supp.3d at 575–76. Although vague allegations with meager factual support are generally insufficient to certify a class, proponents of conditional class certification need not conclusively demonstrate that a class of similarly situated plaintiffs exists. *See Randolph,* 7 F. Supp. 3d at 576; *Syrja,* 756 F. Supp. 2d at 686 (requiring "relatively modest" evidence that the putative class members are similarly situated).

This Court will apply the two-step process because a modest inquiry into the propriety of conditional class certification before issuing court-approved notice is consistent with the purposes of the FLSA collective action provision. Certainly, some threshold inquiry before issuing notice to potential class members is appropriate to ensure that notice is not subject to misuse and is "timely, accurate, and informative." *See Hoffman–La Roche,* 493 U.S. at 171–72. But it is equally important that the inquiry occur under a lenient standard to be consistent with the FLSA's purposes of promoting efficient joint adjudication of claims, lowering the costs of litigation to employee plaintiffs, and accounting for employees' natural reluctance to challenge an employer. *See id.* at 170; *Pentland,* 152 F.2d at 853.

Finally, because all employees who join an FLSA collective action, unlike a class action under Federal Rule of Civil Procedure 23, must affirmatively opt into the litigation as plaintiffs, *see Simmons v. United Mortg. & Loan Inv., LLC,* 634 F.2d 754, 758 (4th Cir. 2011), it would be unfair to impose an initial barrier significantly more stringent than the one imposed on ordinary plaintiffs seeking to join a litigation under Rule 20. For these reasons, the Court will apply the two-step process and the lenient standard at the notice stage.

## B. Conditional Certification

Here, the Court finds that the members of the putative class are sufficiently similarly situated to warrant conditional certification and notice. The Complaint alleges that DSMs are all salaried employees who perform the same job functions. Specifically, DSMs lack supervisory authority, and their actual job duties include making deliveries in place of independent operators, performing clerical duties, engaging in manual labor around Schmidt's warehouses, and working at customers' stores. DSMs consistently work more than 40 hours per week, but they are compensated with a weekly salary and thus do not receive overtime pay. They remain on call and frequently receive assignments outside of their standard work hours. Plaintiffs have submitted five affidavits from DSMs attesting to these facts.

This limited factual showing is more than sufficient to satisfy the lenient standard at this stage. For example, in *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560 (D. Md. 2012), the court certified an FLSA collective action of technicians who installed DirecTV equipment based on the finding that the plaintiffs had "made a modest factual showing that they are similarly situated to other technicians based out of the Waldorf and Beltsville warehouses during the last three years," because "technicians in these warehouses were all subject to the same . . . company policies and procedures, and . . . they followed the same timekeeping policies and practices and same compensation plan," "they typically worked in excess of sixty hours per week but were not compensated for all of this time," and "warehouse managers and supervisors instructed [them] not to record any overtime hours on [their] timesheets even though [they] routinely worked in excess of forty hours in a given week." *Id.* at 568 (internal citations omitted). Other cases in this District have likewise resulted in certification of a collective action under similar circumstances. *See, e.g., Desmond v. Alliance, Inc.*, No. CCB-14-3499, 2015 WL 2165115, at *3 (D. Md. May

7, 2015) ("Through their declarations, the plaintiffs have made the necessary modest factual showing that they are similarly situated to other Coordinators and Leads. The plaintiffs' detailed declarations suggest they performed the same job duties, and explain how overwork and understaffing caused them to work more than 40 hours per week."); *Yeibyo v. E-Park of EC, Inc.*, No. DKC 2007-1919, 2008 WL 182502, at *8 (D. Md. Jan. 18, 2008) ("[U]nder the fairly lenient standard used at the notice stage, Plaintiffs have proffered sufficient allegations of similarity" because "each named plaintiff in this case asserts a common claim; i.e., that Defendants violated the FLSA by failing to compensate him with overtime wages for his work as a parking attendant.").

Schmidt argues that conditional certification is inappropriate because the precise amount of time each DSM spends engaging in particular duties varies based upon the needs of the specific independent operators and establishments to which the DSM is assigned. Any such variance is of little concern at this early stage. To warrant conditional certification, class members' positions "need not be identical, only similar." *Robinson v. Empire Equity Group, Inc.*, No. WDQ-09-1603, 2009 WL 4018560, at *2 (D. Md. Nov. 18, 2009) (quoting *Yeibyo*, 2008 WL 182502, at *7)); *see Desmond*, 2015 WL 2165115, at *3 (citing *Robinson*). At this point, the allegations of similarity set forth in the Complaint and Plaintiffs' affidavits are sufficient. To the extent that Schmidt argues that individualized inquiries into each DSMs' actual duties are necessary to assess whether any DSMs are subject to the administrative exemption to the FLSA's overtime requirements, the potential that certain DSMs are not eligible for FLSA overtime is a merits-based question that need not be resolved at this stage. *See Essame v. SSC Laurel Operating Company LLC*, 847 F. Supp. 2d 821, 826 (D. Md. 2012).

Nor does the Motor Carrier Act ("MCA") exemption to the FLSA, or the Fourth Circuit's prior ruling regarding that exception, alter the Court's analysis. Schmidt argues that based on the Fourth Circuit's ruling on the prior appeal in this case, DSMs are not similarly situated because some are exempt from FLSA overtime requirements under the MCA exemption, but others are not, depending on the number of hours the DSM spends driving light vehicles as part of their duties. The MCA exemption generally provides that the FLSA's overtime requirements do not apply to "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1). Because the Secretary of Transportation has authority to regulate the employees of "motor carriers," *see* 49 U.S.C. § 31502(b) (2012), Schmidt's employees engaged in activities affecting vehicles used to transport property in interstate commerce on public highways would normally be exempt from the FLSA's overtime-wage requirements. However, the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"), Pub. L. No. 110-244 § 306(a), 122 Stat. 1572, 1620 (2008), provides that the FLSA's overtime-wage requirements nevertheless apply to any "covered employee." *Id.* § 306(a). A "covered employee" includes, as relevant here, "an individual":

(1) who is employed by a motor carrier . . . ;

(2) whose work, *in whole or in part*, is defined—

    (A) as that of a driver, driver's helper, loader, or mechanic; and

    (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . .; and

(3) who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id.* § 306(c) (emphasis added). Applying this statutory framework, the Fourth Circuit held that Schmidt's DSMs are "covered employees" "entitled to FLSA overtime wages for hours worked

in excess of 40 hours per week" because they spend "the majority of their working hours making deliveries" and because "between 70% and 90% of their delivery trips [a]re made on vehicles indisputably weighing less than 10,000 pounds." *Schilling v. Schmidt Baking Co., Inc.*, 876 F.3d 596, 602–03 (4th Cir. 2017).

Schmidt argues that a DSM is only a "covered employee," and therefore subject to the FLSA overtime requirements, during those weeks when the employee has driven vehicles for work weighing less than 10,000 pounds. Schmidt asserts that because DSMs necessarily spend different amounts of time making deliveries in their personal vehicles each week, individualized determinations would be required to assess whether and for what time periods DSMs are covered employees, such that they are not similarly situated. This argument is unavailing for two reasons. First, and most significantly, the Fourth Circuit's ruling does not require this Court to assess each Plaintiff's status as a covered employee on a week-to-week basis. In the appeal, the Fourth Circuit rejected Schmidt's argument that its employees are not "covered employees" if they spend more than a *de minimis* amount of time operating large vehicles. *Schilling*, 876 F.3d at 600. Instead, the court held that because the definition of a covered employee includes someone "whose work, *in whole or in part*" affects the safety of vehicle weighing 10,000 pounds or less, the fact that the DSMs spent a "substantial percentage of time" driving small vehicles was sufficient for them to be deemed covered employees, without defining any minimum percentage of time. *Id.* at 600, 603 & n.5. Significantly, the Fourth Circuit held, without qualification, that plaintiffs "[a]re entitled to FLSA overtime wages for hours worked in excess of 40 hours per week." *Schilling*, 876 F.3d at 602. Nothing in the opinion suggests that a DSM's status as a covered employee is based on meeting any particular threshold of work on small vehicles during any given week.

Second, by its plain text, the TCA exception applies to employees based on their job duties, not based on their actual work performed each week. *See* Pub. L. No. 110-244 § 306(c), 122 Stat. 1572, 1621 (stating that a "covered employee" is "any employee . . . whose work, in whole or in part, *is defined. . . as* affecting the safety of operation of motor vehicles weighing 10,000 pounds or less") (emphasis added). The requirement that an employee "performs duties on motor vehicles weighing 10,000 pounds or less," *id.* § 306(c)(3), provides no specific time period, whether a week or longer, during which such activities must occur. Particularly where the FLSA is a remedial statute for which exemptions should be narrowly construed, *see Schilling*, 876 F.3d at 602, the Court declines to read into the statute a limitation unsupported by its plain language.

Schmidt's argument therefore rests solely on a 2010 United States Department of Labor ("DOL") Field Assistance Bulletin interpreting the TCA to provide that "overtime pay requirements apply to an employee of a motor carrier . . . *in any workweek* in which the employee works 'in whole or in part,' as a driver . . . affecting the safety of operation of small vehicles on public highways in interstate or foreign commerce." Wage and Hour Division, U.S. Dep't of Labor, Field Assistance Bulletin No. 2010-2 (2010), *available at* https://www.dol.gov/whd/FieldBulletins/fab2010_2.htm (emphasis added). The Bulletin is not a regulation promulgated after notice-and-comment and formal rulemaking. *See* Wage and Hour Division, U.S. Dep't of Labor, Field Assistance Bulletins, *available at* https://www.dol.gov/whd/FieldBulletins/ (stating that Field Assistance Bulletins "provide Wage and Hour Division (WHD) investigators and staff with guidance on enforcement positions and clarification of policies or changes in policy of WHD" and are "developed under the general authority to administer the various laws enforced by WHD"). Accordingly, it is owed only

limited deference. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."). "[I]nterpretations contained in formats such as opinion letters are entitled to respect under our decision in *Skidmore v. Swift*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944), but only to the extent those interpretations have the power to persuade." *Christensen*, 529 U.S. at 587. Where it appears to conflict with the text of the statute, and it predates the Fourth Circuit's ruling in *Schilling* which contemplates no such limitation, the Bulletin's guidance is not persuasive.

For purposes of resolving the present motion, however, the Court need not decide whether a DSM is a "covered employee" only for specific weeks in which the employee worked on light vehicles. Even if such a limitation applies, that would not provide a basis to deny collective certification at this time. Plaintiffs' allegations, fairly construed, assert that all DSMs conducted deliveries on light vehicles to a substantial degree. If any particular DSM did not work on a light vehicle during a given week, that would not change the fact that the DSM was a "covered employee" for at least some period of employment and is thus similarly situated to Plaintiffs. Regardless of the number of weeks of overtime pay to which a DSM would ultimately be entitled as damages, they are similarly situated because the core question whether DSMs are actually managers subject to the administrative exemption of the FLSA, 29 U.S.C. § 213(a)(1), is common to all DSMs and is most appropriately answered on a collective basis.

To the extent that individualized assessments may need to be made to determine whether there are weeks for which a particular DSM is not entitled to overtime pay, such findings do not justify denying conditional certification under the lenient standard. *See Dunkel v. Warrior*

*Energy Services, Inc.*, 304 F.R.D. 193, 201 (W.D. Pa. 2014) ("[W]hile it may turn out to be true that the exact determination of uncompensated overtime hours will require the Court to make individual assessments of how often each employee drove the smaller vehicles . . . and in which work weeks, it would be inappropriate to deny conditional 'certification' now on that basis."). Notably, in the cases cited by Schmidt in which courts have favorably cited the 2010 DOL Bulletin, the court had granted conditional certification of a collective action and considered the Bulletin later in the case, on the issue of class certification under Rule 23 or on summary judgment. *See, e.g., Moore v. Performance Pressure Pumping Services, LLC*, No. 5:15–cv–432–RCL, 2017 WL 1501436, at *2, *13 (W.D. Tex. Apr. 26, 2017) (denying plaintiffs' motion for summary judgment, because "questions of material fact remain as to whether defendants are entitled to any exemption under the FLSA," after granting a motion for conditional certification); *Cooper v. Noble Casing, Inc.*, No. 15–cv–1907–WJM–CBS, 2016 WL 6525740, at *1 (D. Colo. Nov. 3, 2016) (denying a motion for class certification under Rule 23 after granting motion for conditional certification). If discovery reveals that some or all DSMs, in fact, do not drive light trucks or their personal vehicles at all, Schmidt can re-assert its argument that the DSMs are not similarly situated in a post-discovery Motion for Decertification. *See Dunkel*, 304 F.R.D. at 202.

Finally, the Court finds unpersuasive Schmidt's argument that certification is inappropriate because a determination whether DSMs are subject to the TCA exception requires an individualized assessment whether each DSM actually drove vehicles in interstate commerce in each workweek. The MCA exemption, by its own terms, would only exempt an employee from FLSA overtime-wage requirements if that employee worked on vehicles engaged in interstate commerce. *See* 29 U.S.C. § 213(b)(1); 49 U.S.C. §§ 13501-02, 501, 31502(a). Thus,

a finding that a DSM did not work on vehicles engaged in interstate commerce would not exempt that employee from the FLSA.

Thus, the Court finds that, at this stage, Plaintiffs' allegations that the DSMs are similarly situated are sufficient. Therefore, the Court will conditionally certify the collective action and will facilitate notice to those DSMs who are not currently parties to the Complaint.

### C. Notice

Having conditionally certified the collective action, the Court will authorize the provision of notice to members of the putative class. Although Plaintiffs request certain specific rulings relating to notice, such as authorization to post a notice at Schmidt and to use a webpage, Schmidt requests an opportunity to discuss the form of notice with Plaintiffs. Because the arguments for and against specific notice provisions have yet to be fully articulated, and the parties may reach a resolution of some or all of the disputes relating to notice, the Court will decline to issue an order on the specific form or forms of notice and will instead require the parties to meet and confer and submit a comprehensive, joint proposal regarding notice within 15 days.

## II. Motion for Equitable Tolling

FLSA claims are subject to a two-year statute of limitations, which is extended to three years for willful violations. 29 U.S.C. § 255(a). An individual employee is not deemed to have filed an FLSA action until the date that employee consents in writing to join the collective action. 29 U.S.C. § 256(b). With only seven named Plaintiffs having joined the collective action since the filing of the case in 2016, and delay in the case resulting from the earlier appeal, Plaintiffs ask the Court to toll the statute of limitations on behalf of those putative class members

who would otherwise be barred from asserting FLSA claims for some or all of the time period of alleged violations.

The Fourth Circuit has described equitable tolling as "a discretionary doctrine that turns on the facts and circumstances of a particular case [and] does not lend itself to bright-line rules." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (quoting *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999)). "[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris*, 209 F.3d at 330. Generally, equitable tolling is available when (1) "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant," or (2) "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Cruz v. Maypa*, 773 F.3d 138, 146 (4th Cir. 2014) (quoting *Harris*, 209 F.3d at 330)).

Plaintiffs argue that both of these circumstances are present here. Specifically, Plaintiffs argue that equitable tolling is justified by the extraordinary delay in this case arising from the dismissal of the FLSA claims and the reversal of that dismissal on appeal, which prevented putative class members from asserting their claims in a timely manner. They also assert that Schmidt engaged in wrongful conduct, consisting of a threat by a Schmidt Vice President that putative class members should not join the collective action, which warrants equitable tolling.

The Court agrees with Plaintiffs that the unique circumstances of this case warrant equitable tolling. Generally, ordinary litigation delay is not considered an "extraordinary circumstance" warranting equitable tolling. *See, e.g., Sandoz v. Cingular Wireless, LLC*, 700 F. App'x 317, 321 (5th Cir. 2017); *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-cv-00363, 2012 WL 4739534, at *5 (E.D. Va. Oct. 2, 2012); *MacGregor v. Farmers Ins. Exchange*, No. 2:10-

CV-03088, 2011 WL 2731227, at *2 (D.S.C. Jul. 13, 2011), Here, however, Plaintiffs' FLSA claim was dismissed on September 23, 2016, the Fourth Circuit reversed that dismissal on November 17, 2017, and the mandate on that reversal was issued on December 11, 2017. In the interim, no putative class member would have had reason to believe that the claim was meritorious and worthy of the risk of joining the collective action. Where the ruling of the district court, which was later adjudged to be incorrect, caused a delay of approximately 15 months, accounting for more than half the limitations period, the Court finds an "extraordinary" circumstance that by itself warrants equitable tolling. *See Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 171 (S.D.N.Y. 2014) (granting equitable tolling during the nine-month period during which a motion for conditional certification of a collective action was pending). *Cf. Nedds v. Calderon*, 678 F.3d 777, 782 (9th Cir. 2012) (finding, in the habeas context, that good-faith reliance upon later-overturned circuit precedent was an extraordinary circumstance warranting equitable tolling).

Furthermore, Plaintiffs have introduced an affidavit stating that in August 2016, shortly after the filing of the Complaint, a Vice President of Schmidt told a group of more than a dozen DSMs that he "better not find out any of you joined this lawsuit." McEwen Aff. ¶ 5, ECF No. 26-8. The Schmidt Vice President denies making such a threat. Although such a threat, if made, could constitute wrongful conduct warranting equitable tolling, resolution of this factual dispute would be time consuming and is unnecessary at this time. The reality is that, whether or not an overt threat was made, any DSM who wished to continue working at Schmidt would have risked antagonizing his or her employer by asserting an FLSA claim. Next to this risk stood a possibility of reward that, once the district court had dismissed the case, appeared remote, at best, until the dismissal was overturned by the Fourth Circuit over a year later. Under the

specific facts of this case, putative class members could not realistically have been expected to assert their FLSA claim in a timely manner.

Schmidt notes that some courts have declined to grant equitable tolling to putative members of an FLSA collective action, whether because counsel for the named plaintiffs do not actually represent those individuals or because the court cannot assess the diligence of unknown individuals. *See, e.g., Atkinson v. Teletech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *8 (S.D. Ohio Feb. 26, 2015); *In re Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act and Wage and Hour Litigation*, MDL No. 2504, 2014 WL 3695750, at *3 (W.D. Ky. Jul. 24, 2014). However, the vast majority of courts have allowed named plaintiffs to request such relief. *See, e.g., Chime v. Peak Security Plus, Inc.*, 137 F. Supp. 3d 183, 188, 204–05 (E.D.N.Y. 2015); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 171 (S.D.N.Y. 2014); *Struck v. PNC Bank*, 931 F. Supp. 2d 842, 849 (S.D. Ohio 2013); *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181–82 (D. Colo. Jun. 14, 2012); *Putnam v. Galaxy 1 Marketing, Inc.*, 276 F.R.D. 264, 276 (S.D. Iowa 2011). In the Court's view, the majority approach is appropriate when applying a doctrine grounded in equity.

Where individuals have a potentially meritorious FLSA claim, but are prevented from asserting that claim by extraordinary circumstances not of their own making, the proper course is to toll the statute of limitations to allow adjudication of their claim on the merits. Accordingly, the Court will Grant Plaintiffs' Motion for Equitable Tolling. The statute of limitations will be tolled from July 27, 2016 until the date notice is disseminated.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification and Motion for Equitable Tolling of the Statute of Limitations are GRANTED. The parties will be directed to submit a joint proposal relating to notice of the collective action within 15 days. A separate order shall issue.

Date: July 20, 2018

THEODORE D. CHUANG
United States District Judge